**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| JOHN GEORGE, | ) | Civil Action No. 4:17-cv-02322-BYP |
| | ) | |
| Plaintiff, | ) | The Hon. Benita Y. Pearson |
| | ) | U.S. District Judge |
| vs. | ) | |
| | ) | |
| YOUNGSTOWN STATE | ) | |
| UNIVERSITY, JAMES TRESSEL, | ) | |
| MARTIN ABRAHAM, and | ) | |
| GREGG STURRUS, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | FILED ELECTRONICALLY |

**AMENDED COMPLAINT**

AND NOW comes Plaintiff, John George ("Dr. George"), by and through undersigned

counsel and pursuant to Order filed January 24, 2018, and files this Amended Complaint stating

claims under Title VII, 42 U.S.C. § 2000e et seq., Title IX, 20 U.S.C. § 1681 et seq., and the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq.,[1] stating as follows:

**I. PARTIES**

1.      Dr. George is an adult individual residing in Mahoning County, Ohio.

2.      Defendant Youngstown State University ("YSU"), is a public institution of post-

secondary education with its principal place of business at 1 University Plaza, Youngstown, Ohio

44555.

3.      Defendant James Tressel ("President Tressel") is the president of YSU and has his

principal place of business a 1 University Plaza, Youngstown, Ohio 44555.

---

[1]In this Amended Complaint, Plaintiff removed Counts IV and V of the initial Complaint.
These are the only substantive changes as Paragraphs 1 - 176 of this Amended Complaint are
identical to those in the initial Complaint.

4. Defendant Martin Abraham ("Provost Abraham") is the provost of YSU and has his principal place of business at 1 University Plaza, Youngstown, Ohio 44555.

5. Defendant Gregg Sturrus ("Dean Sturrus") was, during the time relevant to this Complaint, interim Dean of the College of Science, Technology, Engineering, and Mathematics ("STEM").

6. President Tressel, Provost Abraham, and Dean Sturrus are being sued in their official capacities for prospective injunctive relief.

7. Provost Abraham and Dean Sturrus are being sued in their individual capacities for monetary damages.

## II. JURISDICTION

8. The jurisdiction of the Court over matters in this Complaint is founded upon 28 U.S.C. § 1331, 28 U.S.C. § 1367(a), and 42 U.S.C. § 2000e.

## III. VENUE

9. The events set forth in this Complaint occurred in Mahoning County, Ohio, in the Northern District of Ohio; therefore, venue is appropriate in this Court.

## IV. ADMINISTRATIVE EXHAUSTION

10. Dr. George filed an administrative charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about Jan. 21, 2016; this charge was docketed at 532-2016-00708.

11. Dr. George cross-filed the aforementioned charge with the Ohio Civil Rights Commission ("OCRC").

2

12.     The EEOC issued a "Right to Sue" notice to Dr. George on or about Aug. 9, 2017, thereby giving him the right to place his claims in court.

## V.  FACTS

13.     Dr. George was an Assistant Professor in YSU's School of Engineering Technology in the College of Science, Technology, Engineering, and Mathematics ("STEM," "the STEM College" or "the Engineering Technology School").

14.     Dr. George is 67 years old, and he holds (1) a Bachelor of Science degree in Mathematics, (2) a Bachelor of Engineering degree in Mechanical Engineering, (3) a Master of Science degree in Education (Mathematics Major), and (4) a Doctor of Education degree in Educational Foundations Research Technology & Leadership.

15.     Dr. George currently has a valid five year professional license to teach high school mathematics and physics in the State of Ohio.

16.     Dr. George has successfully completed 25 math courses valid toward the math major Baccalaureate and/or Master's level.

17.     Dr. George's doctoral dissertation was on best practices for teaching and retaining at-risk science and engineering students.

18.     In STEM, the terminal degree is a Master's Degree and roughly fifty percent of all faculty within Engineering Technology have a Master's Degree as their highest degree.

19.     In 2005, despite positive recommendations from his department chair, the majority of tenured faculty in the School of Engineering Technology, and the University-wide Tenure Appeal Committee (which had unanimously recommended in favor of granting tenure), Dr. George's application for tenure was denied.

3

20.     In 2006, then YSU President Dr. David Sweet rejected the unanimous recommendation of the Tenure Appeal Committee and denied Dr. George tenure.

21.     Also in 2006, then YSU Dean of Engineering and Engineering Technology, Dr. Cynthia Hirtzel, in disregard to qualifications encouraged a recent bachelor's degree graduate, a less qualified African American to assume John George's position.

22.     Dr. George brought a lawsuit against YSU for reverse race, age, and gender discrimination.

23.     In March 2008, Dr. George executed a Settlement Agreement with YSU regarding the aforementioned lawsuit he had filed under Title VII (reverse race and gender discrimination) and the OFEPA, OHIO REV. CODE § 4112.02 (reverse race, gender, and age discrimination), following the 2006 denial of his tenure application.

24.     As part of the Confidential Settlement Agreement, Dr. George was reinstated for the 2008-09 academic year on a "Term" contract basis, and granted automatic one-year renewals through the 2011-12 academic year.

25.     When he returned to YSU in 2008, Dr. George was welcomed back by then VP for Student Affairs, Dr. Cyndy Anderson (subsequent President succeeding Dr. David Sweet and preceding Dr. Randy Dunn and President Tressel); however with the current the administration one member (who was there during the settlement) is now among the four (4) member YSU Executive Officers.

26.     In accordance with the Settlement Agreement, since 2008 Dr. George has taught a variety of courses within his areas of expertise including, but not limited to, ENTC 1500, Math 1501, Math 1552, Math 1504, PHYS 1500, Math 1507, and STEM 1513.

4

27.     For the 2015 Fall Semester, he was scheduled to teach two sections of ENTC 1500 (five workload hours a piece) and had been requested by the Associate Dean of STEM to teach one and preferably two sections of STEM 1513 (three workload hours a piece).

28.     Dr. George designed and taught ENTC 1500, which he geared towards student retention.

29.     Dr. George's efforts with respect to ENTC 1500 and a related class, STEM 1513, helped YSU retain students, which projected to a guaranteed revenue boost of $2.1 million over a five year period.

30.     Under the then current YSU–Faculty collective bargaining agreement, workload hours beyond 24 for the year required overload pay.

31.     These two courses were designed with the integral involvement of Dr. George to assist at-risk students to successfully complete a degree in engineering technology in the primary instance and in any STEM course of study in the secondary instance, a vital interest of Dr. George and a stated primary goal of YSU (*i.e.*, student retention).

32.     On or about April 20 or 21, 2015, Prof. George was informed by his Department Chair, Carol Lamb ("Prof. Lamb"), that his "Term" position in the School of Engineering Technology would be eliminated for the 2015-2016 academic year.

33.     According to Prof. Lamb, the decision was made by Provost Abraham who relayed the decision to Dean Sturrus, Interim Dean of STEM.

34.     Purportedly, the decision not to renew Dr. George's contract was caused by the return to the Department from a three (3) year leave of absence of Prof. Brian Vuksanovich ("Prof. Vuksanovich"), a tenured Associate Professor of Mechanical Engineering Technology.

5

35.     As stated on the YSU Engineering Technology website (accessed 1/16/16), Prof. Vuksanovich's primary teaching interests are in automation, advanced manufacturing, CAD/CAM simulations, design and product development, and system reliability.

36.     Prof. Vuksanovich's return to the Department does not justify the non-renewal of Dr. George's contract.

37.     For the Fall 2015 semester, Prof. Vuksanovich taught MET 3706 (Machine Design 1), MET 3710 (Tool Design), and MET 3714L (Fluid Mechanics Lab).

38.     For the Spring 2016 semester, Prof. Vuksanovich taught MET 3707 (Machine Design 2), and MET 4860/L (Robotics Technology and Lab).

39.     Mario Ricciardi ("Instructor Ricciardi"), an adjunct faculty member taught MET 3706 (Machine Design 1) in Spring 2016.

40.     Matthew Michael Proch ("Instructor Proch"), an adjunct faculty member, is teaching MET 3707 (Machine Design 2) in Fall 2017.

41.     For the Fall 2017 semester, Prof. Vuksanovich is teaching MET 3720 (Mechanisms); a course which universally in recent years was taught by term contract Assistant Professor Gross who was retained at YSU in preference to Dr. George.

42.     In comparison, as mentioned above, Dr. George was scheduled to teach ENTC 1500 and STEM 1513.

43.     As a result, there is no overlap whatsoever in the courses to be taught by Dr. George and Prof. Vuksanovich.

44.     Indeed, Prof. Vuksanovich's courses all are in "Mechanical Engineering Technology" and, while Dr. George is qualified to teach MET courses, since his return to YSU in 2008 he has not

6

been assigned to teach a single MET course.

45.     As a result, Prof. Vuksanovich's return to campus to teach MET courses clearly does not justify bumping Dr. George from the STEM College and causing him to lose his job particularly after such significant contributions.

46.     To date, Dr. George has not had any alleged issues either with his performance or his conduct at YSU; accordingly, this reason does not justify the decision not to renew his contract.

47.     As an example, for his 2014-15 Performance Evaluation, Dr. George was rated as Strong in Teaching, Very Strong in Scholarship, and Strong in University Service, and his Chair noted positively that Dr. George "is dedicated to teaching" and "consistently continues to improve and bring new lab experiences to the class."

48.     Further, no budgetary reason has been offered for this decision.

49.     YSU had transferred three million dollars into a "Strategic Initiative Fund" and, as such, there was enough money to fund Dr. George's position within STEM.

50.     Dr. George's position was the sole position eliminated in the School of Engineering Technology and, to the best of his knowledge, the only one eliminated in the entire STEM College.

51.     Under the circumstances, YSU has treated Dr. George unfairly and in a discriminatory and retaliatory fashion.

52.     Dr. George also pointed out that his initial approach was to try to resolve the (termination) issue through the settlement agreement but YSU declared the agreement now null and void.

53.     In reliance on the Arbitration provision inserted by YSU into the Settlement Agreement that any claim that could be brought in "any federal, state or local agency or commission

7

is subject to this Alternate Dispute Resolution Process," Dr. George initially complained of this discriminatory and retaliatory treatment to YSU via letter dated June 22, 2015, and, following no resolution, filed a Complaint in Arbitration on October 16, 2015.

54.    In YSU's Answer in Arbitration, YSU asserted for the first time that Dr. George's discrimination and retaliation claims are not subject to the Arbitration provision.

55.    As a result, Dr. George filed administrative charges with the EEOC and OCRC.

56.    Between April 19, 2015, and October 30, 2017, Dr. George has applied for fifteen (15) positions at YSU; been turned down on eight (8) positions, disqualified on one (1), witnessed one (1) questionable cancellation and to this best of his knowledge regards five (5) as still open; though one (1) has been open for 11 months and another one (1) for 5 months as of November 1, 2017.

57.    For example, Dr. George applied for a position as an Instructor in Mechanical Engineering and Industrial Engineering ("ME & IE Department"), but contrary to applicable procedures his name and materials were not forwarded to the Search Committee, as later confirmed by a Member of that Committee.

58.    The job posting for the aforementioned position listed a Master's degree in Mechanical Engineering or a closely related field.

59.    Dr. George, a longtime practicing engineer, engineering educator, and professional engineer with a Master's Degree in Education (Mathematics major) and a Bachelor of Engineering Degree in Mechanical Engineering, was qualified for the aforementioned position.

60.    Ultimately, the Search Committee selected Stephan Moldovan ("Prof. Moldovan"), a sufficiently younger male, for the Instructor position.

8

61.    Prior to Prof. Moldovan's hiring, Dr. George was informed that the instructor's position was modified to fit the background for a specific candidate.

62.    The process that resulted in the hiring of Prof. Moldovan was manipulated in order to achieve a pre-ordained result.

63.    Yet even before he was hired, YSU unilaterally and outside the normal course decided to hire another sufficiently younger male for the Instructor position, Anthony Viviano ("Mr. Viviano"), and bumped Prof. Moldovan from Instructor to a just-created and un-advertised position of Assistant Professor.

64.    Unlike Dr. George, Mr. Viviano does not have a terminal degree and he is the live-in boyfriend of Hazel Marie ("Prof. Marie"), the current Chair of the ME & IE Department.

65.    These events reflect troubling irregularities in the search process for the Instructor position and demonstrate that there was no actual search conducted for the Assistant Professor position, which in turn resulted in the failures to hire Dr. George.

66.    Dr. George also applied for the position of Associate Vice President for Student Success on April 19, 2015; the areas of expertise sought in the job specifications were student retention, completion, and success.

67.    Dr. George was superbly qualified for this position.

68.    For example, Dr. George's 2013 doctoral dissertation – "Preparing Math Deficient University Students for STEM Achievement and Sustainable Learning" – focused on student retention, completion, and success.

69.    In addition, Dr. George helped design two courses at YSU – ENTC 1500 (Technical Skills Development) and STEM 1513 (Studies in STEM Connectivity) – to assist at-risk students

9

to successfully complete a degree in engineering technology in the primary instance and in any STEM course of study in the secondary instance.

70.     Despite his excellent qualifications and intimate knowledge of YSU, Dr. George was not even invited for an interview; instead, YSU decided to interview three external candidates.

71.     YSU interviewed two of the candidates and the final one withdrew his candidacy.

72.     At some point, Mike Reagle ("Dr. Reagle"), a non-applicant, expressed interest in the position although it is unclear whether he formally applied (unlike Dr. George).

73.     In contrast to Dr. George, Dr. Reagle's background and experience is not in student retention, completion, and success as required for the position.

74.     Nevertheless, Dr. Reagle was placed on the fast track and, following a single open forum session, hired for this position with an annual salary of $130,000.00.

75.     Dr. Reagle is sufficiently younger than Dr. George to permit an inference of age discrimination.

76.     As with the other positions, Dr. George was well qualified for this position based on his experience and credentials, in engineering, mathematics, and education.

77.     Dr. George further applied for the position of Director of Dual Enrollment and Student Support ("Dual Enrolment Director") on July 14, 2015; this position oversees all operations of the Mathematics Assistance Center (MAC), coordinates and manages College Credit Plus offerings (high school students earning college credits), and assists with outreach and recruitment programs within the Department of Mathematics and Statistics.

78.     As with the other positions, Dr. George was well-qualified for this position based on his experience and credentials, both in engineering and in education.

10

79.     In addition, Dr. George has taught a number of mathematics courses at YSU, including introductory algebra, intermediate algebra, intermediate algebra plus trigonometry and business calculus.

80.     Dr. George has taught high school seniors and juniors in an intensive six week math curriculum to help them bridge into college pre-calculus or calculus as part of the Choose Ohio First Scholarship Program.

81.     A main responsibility of the Dual Enrolment Director position involves working with Karla Krodel ("Ms. Krodel") and her office for ensuring compliance and completing necessary paperwork.

82.     Dr. George has worked well with Ms. Krodel in the past on workforce development and  enjoys a strong relationship with area grades 7-12 teachers based on his involvement in the Choose Ohio First Scholarship Program, as a Committee Member for founding the new Mahoning County STEM Academy High School (projected Fall 2016), and his work on grades 7-12 teacher professional development.

83.     Despite his excellent qualifications, Dr. George was not hired for this Dual Enrollment Director position and was not even selected for an interview.

84.     Instead, YSU selected Julie Seitz ("Ms. Seitz") (female) for the Dual Enrolment Director position.

85.     Based on information and belief, Ms. Seitz is sufficiently younger than Dr. George to permit an inference of age discrimination.

86.     On October 22, 2015, Dr. George was informed by a member of the math faculty that his name and materials were not forwarded to the search committee; indeed only two candidates

11

were considered; neither being Dr. George.

87.     Earlier, on October 8, 2015, Dr. George applied for the position of YSU Coordinator, Continuous Improvement Process ("Improvement Process Coordinator").

88.     Dr. George has been involved in continuous improvement processes as both an engineer and educator since he first met W. Edwards Deming, the acknowledged world expert on process improvement, more than thirty (30) years ago.

89.     The position of Improvement Process Coordinator is no longer listed on the YSU posted open positions but Dr. George has received no notice regarding its status.

90.     While Dr. George seeks to aid at risk students the recent restructuring at YSU has resulted in a young male recently named as director of a new after-school initiative funded by an external grant.

91.     This individual currently is banned from entry to Niles Middle School for inappropriate activity with female minor middle school students while acting as a mentor representing YSU.

92.     On February 24, 2016, Dr. George applied for the position of YSU Director, Center for Human Services Development; this was the position caused by the termination of Ricky George.

93.     This same individual, Ricky George, as of October 15, 2017, was still listed as YSU's REEP certified agent though there are questions as to whether he ever qualified to act in this capacity and whether YSU was and is receiving grant funds based on false claims.

94.     Although qualified for the position, Dr. George did not receive an interview.

95.     On April 9, 2016, Dr. George applied for the position of YSU First Year Engineering Program Director.

12

96. This position was filled on or about July 6, 2016; although well qualified, Dr. George was not invited for an interview.

97. On April 25, 2016, Dr. George applied for YSU Assistant Professor in Mechanical Engineering.

98. The minimum qualifications for the aforementioned position call for a Masters in Mechanical Engineering or closely related field.

99. Dr. George's Master's in Education with the heavy dose of math and Professional Engineering licensure constitute a closely related field.

100. The position also calls for teaching courses in the thermal-fluid sciences (this is Dr. George's engineering field), experience with laboratory development (which is Dr. George's preferred manner of teaching) and industrial experience (Dr. George has 20 years).

101. Although qualified for the aforementioned position, Dr. George was not invited for an interview; the position was ultimately cancelled on or about July 26, 2016.

102. Between November 2016 and May 2017, Dr. George applied, unsuccessfully, for the following positions at YSU: Assistant Director of Research Services; Senior Coordinator 2, Metro Credit Program Coordinator, and Associate Director for the Center for Human Services Development.

103. On November 4, 2016, Dr. George applied for YSU Assistant Director Research Services; he did receive a Skype interview January 5, 2017, but was to learn that the ultimately selected candidate had met with the source of the search, Michael Ripko, prior to the write-up of the search criteria and that a software package (Moderas) she had used at a prior place of employment had been leased prior to Dr. George's Skype interview.

13

104.    On November 11, 2016, Dr. George applied for YSU Senior Coordinator 2; although well qualified; he did not receive an interview and the position was filled on or about January 10, 2017.

105.    On November 29, 2016, Dr. George applied for YSU Metro Credit Program Coordinator; although well qualified; he has not yet received an interview and to the best of his knowledge the position is still open.

106.    On February 21, 2017, Dr. George applied for YSU Associate Provost Student Success; this position opening was necessitated by the departure of Dr. Reagle who left YSU prior to fulfilling his three year contractual obligation as Associate VP Student Success.

107.    Dr. George was disqualified for this position per new criteria not included in the 2015 posting; ultimately, only two (2) candidates were selected for final interviews with one of the two dropping out.

108.    On May 26, 2017, Dr. George applied for YSU Associate Director CHSD; although well qualified; he has not received an interview or any notice that the position has been closed.

109.    The position of YSU Associate Director CHSD was a contrived position intended to protect the tenure of Julie Michael Smith (perceived to be a close personal friend of President Tressel and his wife Ellen) should the funding needed for her current position evaporate.

110.    On October 16, 2017, Dr. George applied for YSU Assistant Director Diversity Programs; since a primary aim is to improve retention of minority students and Dr. George has had amazing results in this area in the STEM College, he is uniquely qualified for this position.

111.    On October 24, 2017, Dr. George applied for YSU Coordinator Student Development and Retention; again, based on his record of promoting completion, achievement, retention and

14

enrollment; Dr. George is extremely well qualified for this position.

112.    On October 30, 2017, Dr. George applied for YSU Director Research Services; based on his past performance and proven ability to master new fields of endeavor, Dr. George is qualified for this position.

113.    Dr. George was subjected to adverse employment actions in the form of the denial of his application for academic and/or administrative positions within YSU including, but not limited to, the position of Associate Vice President for Student Success, Mechanical Engineering Instructor, Director Dual Enrollment and Student Support, Coordinator of Continuous Improvement Process, Director Center for Human Services Development, First Year Engineering Program Director, Assistant Professor Mechanical Engineering, Assistant Director Research Services, Senior Coordinator 2, and Associate Provost Student Success.

114.    Dr. George was subjected to adverse employment actions in the form of the elimination of his "Term" position.

115.    Dr. George was subjected to the aforementioned actions on account of his age and gender.

116.    Dr. George was subjected to the aforementioned actions as retaliation for his prior complaints regarding age discrimination; these complaints include, but are not limited to, his prior federal civil rights lawsuit against YSU.

117.    Dr. George demands a jury trial.

## VI.  COUNTS

### COUNT I: RETALIATION FOR PROTECTED ACTIVITIES
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et seq.
### Plaintiff John George vs. Defendant Youngstown State University

118.    The preceding paragraphs are incorporated as if set forth at length herein.

119.    Dr. George engaged in protected conduct including when filed his federal lawsuit against YSU and settled that matter in 2008.

120.    Following that protected activity, Dr. George suffered a materially adverse action when his Term Contract was not renewed on or about April 20, 2015.

121.    A causal connection exists between the protected activity and the adverse action.

122.    For example, Dr. George has suffered antagonism from YSU.

123.    YSU's justification is a pretext for retaliation.

124.    As a result of the termination of Dr. George's Term Contract, he has suffered damages including, but not limited to, the loss of salary ($25,000.00 for the Fall 2015 semester alone) and full-time benefits as well as out-of-pocket costs including for COBRA prescription costs.

125.    In an effort to mitigate damages, Dr. George taught two classes per semester at YSU on a contract basis (Fall 2015 and Spring 2016) and was paid only $5,250.00 for the entire semester ($10,500.00 for the entire year) with no benefits.

126.    On or about April 20, 2015, Dr. George was informed that his term contract (annual salary of  $60,095.00) would not be renewed.

127.    YSU also selected Ms. Seitz for the position of Dual Enrollment Director over Dr. George, notwithstanding his qualifications for that position.

128.     On May 4, 2015, Dr. George applied for YSU Mechanical Engineering Instructor, but contrary to applicable procedures his name and materials were not forwarded to the Search Committee.

129.     Ultimately, the Search Committee selected Prof. Moldovan for the Instructor position, yet before he was hired YSU, unilaterally and outside the normal course, decided to hire another younger male for the Instructor position, Mr. Viviano, and bumped Prof. Moldovan from Instructor to Assistant Professor.

130.     Mr. Viviano does not have a terminal degree and he is the live-in boyfriend of Prof. Marie, the current Chair of the ME & IE Department.

131.     Ultimately, Prof. Moldovan was selected for the Instructor position but then Instructor Viviano assumed the position while Prof. Moldovan was bumped to a just-created and un-advertised position of Assistant Professor; YSU's justification for terminating Dr. George is a pretext for discrimination.

132.     On April 9, 2016, Dr. George applied for the position of YSU First Year Engineering Program Director.

133.     Although well qualified, Dr. George was not invited for an interview; the position was filled on or about July 6, 2016.

134.     On April 25, 2016, Dr. George applied for YSU Assistant Professor in Mechanical Engineering.

135.     The minimum qualifications for the aforementioned position call for a Masters in Mechanical Engineering or closely related field.

17

136.    Dr. George's Master's in Education with the heavy dose of math and Professional Engineering licensure constitute a closely related field.

137.    The position also calls for teaching courses in the thermal-fluid sciences (this is Dr. George's engineering field), experience with laboratory development (which is Dr. George's preferred manner of teaching) and industrial experience (Dr. George has 20 years).

138.    Although qualified Dr. George was not invited for an interview; the position was ultimately cancelled on July 26, 2016.

139.    Meanwhile, Instructor Viviano continues to teach a full load on a term contract (e.g., 12 semester hours in Fall 2017).

140.    Dr. George was subjected to adverse employment actions in the form of the denial of his application for the academic and/or administrative positions within YSU, including, but not limited to, the positions of Associate Vice President for Student Success, Mechanical Engineering Instructor, Director Dual Enrollment and Student Support, Coordinator of Continuous Improvement Process, Director Center for Human Services Development, First Year Engineering Program Director, Assistant Professor Mechanical Engineering, Assistant Director Research Services, Senior Coordinator 2, and Associate Provost Student Success.

141.    Dr. George was subjected to the aforementioned actions in retaliation for his engagement in protected activities including his prior lawsuit, settlement agreement, and more recent complaints of discrimination/retaliation filed with the EEOC.

142.    Dr. George seeks all remedies and damages permitted under Title VII, including back pay, damages for lost prospective future employment, damages for prospective harm in his present position, compensatory damages for emotional pain and suffering, injunctive and declaratory relief,

and payment of his litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-judgment interest.

COUNT II: DISCRIMINATION ON THE BASIS OF GENDER
VIOLATION OF TITLE IX, 20 U.S.C. § 1681 et seq.
Plaintiff John George vs. Defendant Youngstown State University

143.    The preceding paragraphs are incorporated as if set forth at length herein.

144.    Title IX prohibits gender discrimination in educational institutions that receive federal funding.

145.    YSU is an educational institution that receives federal funding.

146.    The preceding paragraphs are incorporated as if set forth at length herein.

147.    Dr. George is a male and a member of the class protected by the Title IX.

148.    Dr. George is qualified to be hired to the position of Dual Enrolment Director.

149.    His qualifications notwithstanding, Dr. George was passed over that position in favor of a significantly younger female, Ms. Seitz.

150.    The circumstances surrounding the denial of the Dual Enrollment Director position to Dr. George in favor of Ms. Seitz supports an inference of gender discrimination.

151.    The denial of the Dual Enrollment Director position constitutes an adverse employment action that Dr. George experienced on account of his gender.

152.    YSU administrators knew of, or should have known of, any discrimination on the basis of gender involving Dr. George.

153.    Dr. George also was subjected to adverse employment actions in the form of the denial of his application for the academic and/or administrative positions within YSU, including, but not limited to, the positions of Associate Vice President for Student Success, Mechanical

19

Engineering Instructor, Director Dual Enrollment and Student Support, Coordinator of Continuous

Improvement Process, Director Center for Human Services Development, First Year Engineering

Program Director, Assistant Professor Mechanical Engineering, Assistant Director Research

Services, Senior Coordinator 2, and Associate Provost Student Success.

154.    YSU hired women into one or more of those positions raising an inference of gender

discrimination.

155.    YSU's justifications for not hiring Dr. George into those positions are a pretext.

156.    Dr. George seeks all remedies and damages permitted under Title IX, including back

pay, damages for lost prospective future employment, damages for prospective harm in his present

position, compensatory damages for emotional pain and suffering, injunctive and declaratory relief,

and payment of his litigation costs, including reasonable attorneys' fees, plus pre-judgment and

post-judgment interest.

COUNT III: DISCRIMINATION ON THE BASIS OF AGE
VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
29 U.S.C. § 621 et seq.
Plaintiff John George vs. Defendants James Tressel, Martin Abraham, and Gregg Sturrus

157.    The preceding paragraphs are incorporated as if set forth at length herein.

158.    The individual Defendants to this charge–President Tressel, Provost Abraham, and

Dean Sturrus–are being sued in their official capacities for prospective injunctive relief.

159.    Dr. George is 67 years old and a member of the class protected by the ADEA.

160.    Dr. George is qualified for his position.

161.    On or about April 20, 2015, Dr. George was informed that his term contract (annual

salary of  $60,095.00) would not be renewed.

162.     The termination occurred under circumstances giving rise to an inference of age discrimination including, but not limited to, that YSU terminated or demoted other similarly situated older workers at the same time including, but not limited to,

     a.     Ronald Chordas, Executive Director for the Center for Urban & Regional Studies, approximately 70 years of age;

     b.     Edward Orona, Director of Grants & Sponsored Programs, approximately 62 years of age.

163.     In addition, at the same time, YSU appointed several younger workers including, but not limited to,

     a.     Mr. Viviano, Instructor, ME & IE Department, $59,384.00, and

     b.     Prof. Moldovan, Assistant Professor, ME & IE Department, $60,000.00.

164.     YSU also selected Ms. Seitz, a significantly younger female, for the position of Dual Enrollment Director over Dr. George, notwithstanding his qualifications for that position.

165.     Dr. George recently applied for a position as an Instructor in the ME & IE Department, but contrary to applicable procedures his name and materials were not forwarded to the Search Committee.

166.     Ultimately, the Search Committee selected Prof. Moldovan for the Instructor position, yet before he was hired YSU, unilaterally and outside the normal course, decided to hire another younger male for the Instructor position, Mr. Viviano, and bumped Prof. Moldovan from Instructor to Assistant Professor.

167.     Mr. Viviano does not have a terminal degree and he is the live-in boyfriend of Prof. Marie, the current Chair of the ME & IE Department.

21

168.    YSU's justification for terminating Dr. George is a pretext for discrimination.

169.    As a result of the termination of Dr. George's Term Contract, he has suffered damages including, but not limited to, the loss of salary ($25,000.00 for the Fall 2015 semester alone) and full-time benefits.

170.    In an effort to mitigate damages, Dr. George taught two classes per semester at YSU on a contract basis (Fall 2015 and Spring 2016) and was paid only $5,250.00 for the entire semester ($10,500.00 for the entire year) with no benefits.

171.    Dr. George was subjected to adverse employment actions in the form of the elimination of his "Term" position.

172.    Dr. George also was subjected to adverse employment actions in the form of the denial of his application for the academic and/or administrative positions within YSU, including, but not limited to, the positions of Associate Vice President for Student Success, Mechanical Engineering Instructor, Director Dual Enrollment and Student Support, Coordinator of Continuous Improvement Process, Director Center for Human Services Development, First Year Engineering Program Director, Assistant Professor Mechanical Engineering, Assistant Director Research Services, Senior Coordinator 2, and Associate Provost Student Success.

173.    YSU hired sufficiently younger individuals into one or more of those positions raising an inference of age discrimination.

174.    YSU's justifications for not hiring Dr. George into those positions are a pretext.

175.    Dr. George was subjected to the aforementioned actions on account of his age.

176.    Dr. George seeks all equitable remedies and injunctive relief permitted by law, including, but not limited to, restoration of his Term Contract and salary, and to be hired into the

positions of that he had applied for, including, but not limited to, the positions of Associate Vice President for Student Success, Mechanical Engineering Instructor, Director Dual Enrollment and Student Support, Coordinator of Continuous Improvement Process, Director Center for Human Services Development, First Year Engineering Program Director, Assistant Professor Mechanical Engineering, Assistant Director Research Services, Senior Coordinator 2, or Associate Provost Student Success.

Respectfully Submitted,

MORGAN & PAUL, PLLC                          LIEBER HAMMER HUBER & PAUL, P.C.

s/Gregory G. Paul                            s/James B. Lieber
Gregory G. Paul, Esq.                        James B. Lieber
Ohio I.D. No. 79015                          PA I.D. No. 21748
gregpaul@morgan-paul.com                     Thomas M. Huber
MORGAN & PAUL, PLLC                          PA I.D. No. 83053
100 First Avenue, Suite 1010                 5528 Walnut Street
Pittsburgh, PA 15222                         (412) 687-2231 (tel.)
(412) 259-8375                               (412) 687-3140 (fax)
Admitted in Ohio                             Counsel for Plaintiff
Counsel for Plaintiff

23

JURY DEMAND

A trial by jury is hereby demanded.

Respectfully Submitted,

MORGAN & PAUL, PLLC                          LIEBER HAMMER HUBER & PAUL, P.C.


s/Gregory G. Paul                                   s/James B. Lieber
Gregory G. Paul, Esq.                              James B. Lieber
Ohio I.D. No. 79015                                PA I.D. No. 21748
gregpaul@morgan-paul.com                           Thomas M. Huber
MORGAN & PAUL, PLLC                          PA I.D. No. 83053
100 First Avenue, Suite 1010                       5528 Walnut Street
Pittsburgh, PA 15222                               (412) 687-2231 (tel.)
(412) 259-8375                                     (412) 687-3140 (fax)
Admitted in Ohio                                   Counsel for Plaintiff
Counsel for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 1, 2018, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of such filing to the following:


Gregory G. Paul, Esq.
Morgan & Paul, PLLC
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
tel: (412) 259-8372

Counsel for Plaintiff

Drew C. Piersall, Esq.
Scott H. DeHart, Esq.
Zashin & Rich Co., L.P.A.
17 South High Street, Suite 900
Columbus, OH 43215
tel: (614) 224-4411
fax: (614) 2244433

Counsel for Defendants


s/James B. Lieber
James B. Lieber
Counsel for Plaintiff