PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN GEORGE, | ) | |
| | ) | CASE NO.  4:17CV2322 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| YOUNGSTOWN STATE UNIVERSITY, *et al.*, | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | [Resolving ECF Nos. 45 & 52] |
| Defendants. | ) | |

Pending before the Court is Defendants Youngstown State University, James Tressel, Martin Abraham, and Gregg Sturrus' Motion for Summary Judgment.  ECF No. 45.  Plaintiff John George has responded[1] (ECF No. 50) and Defendants have replied (ECF No. 55). Additionally, Plaintiff has filed a Motion for Leave to File Supplemental Complaint.  ECF No. 52. Defendants oppose the motion.  ECF Nos. 56 & 58.  For the reasons that follow, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Leave to File Supplemental Complaint.

---

[1] On October 23, 2018, Defendants filed a motion for leave to exceed page limitations by 15 pages in their summary judgment motion.  ECF No. 32.  In the motion, Defendants indicate "opposing counsel was contacted and they do not oppose this motion, so long as Defendants' counsel does not oppose a reciprocal request.  Defendants' counsel certainly agrees to such a request."  *Id.*  The Court granted Defendants' motion. However, Plaintiff failed to file his own motion for leave to exceed page limitations in his opposition, using the Court's granting of Defendants' motion as authorization to file his 34 page opposition.  Because Plaintiff did not receive approval from the Court to file an opposition exceeding 20 pages in length, Plaintiff's opposition is in violation of L.R. 7.1(f).  Nonetheless, the Court reviews Plaintiff's opposition in full.

# I. Background

## A. Plaintiff's Hiring and Denial of Tenure

Plaintiff attended Youngstown State University ("YSU") as a student, earning a bachelor's degree in mathematics in 1972, a bachelor's degree in engineering in 1974, and a master's degree in education in 1978. ECF No. 33 at PageID #: 299. YSU hired Plaintiff as an instructor on a one year contract for the 1999-2000 academic year. *Id.* at PageID #: 300. The following year, YSU hired Plaintiff as an Assistant Professor in the School of Technology. *Id.* This was a tenure track position. *Id.* Plaintiff applied for tenure during the fall semester of 2005. The President of YSU at the time, David Sweet, denied Plaintiff's application for tenure. *Id.* Plaintiff's application was brought before a Tenure Appeal Committee made up of three members: Dr. Sturrus, Dr. Robert Foulkes, Jr., and Dr. Charles Singler. *Id.* The committee unanimously recommended awarding Plaintiff tenure. *Id.* Sweet rejected the recommendation and upheld the denial of tenure. *Id.*

## B. Plaintiff's 2006 Claims and Settlement

On April 28, 2006, Plaintiff filed a charge of discrimination arising from his denial of tenure with the Equal Employment Opportunity Commission ("EEOC"). *Id.* After receiving a Notice of Right to Sue, Plaintiff filed a complaint in federal court on December 13, 2006, alleging race, sex, and age discrimination against YSU and then-dean of the College of Engineering and Technology Cynthia Hirtzel. *Id.*; ECF No. 48-2. The parties settled the matter in March 2008. ECF No. 33 at PageID #: 301. The settlement agreement entitled Plaintiff to reinstatement as an Assistant Professor, School of Technology for the fall semester of 2008. *Id.*

(4:17CV2322)

Plaintiff was also entitled to renewal of his employment contract on an annual basis for the academic years of 2008-09, 2009-10, 2010-11, and 2011-12. *Id.*

**B. YSU Extends Plaintiff's Contract Until 2015**

Beginning in 2012-13, YSU was free to decline to renew Plaintiff's employment contract. ECF No. 48-3 at PageID #: 3687. Nonetheless, YSU renewed Plaintiff's one-year term contracts for the 2012-13, 2013-14, and 2014-15 academic years. ECF No. 33 at PageID #: 301. During this time, Associate Professor of Mechanical Engineering Technology Brian Vuksanovich was on a three year unpaid leave of absence from YSU. *Id.* at PageID #: 302.

In mid-April of 2015, YSU Department of Engineering Technology Chair Carol Lamb, Plaintiff's direct supervisor, informed Plaintiff that his term contract would not be renewed. *Id.* at PageID #: 301. Lamb reported to interim Dean of the College of Science, Technology, Engineering, and Mathematics, Gregg Sturrus, who in turn reported to Provost Martin Abraham, who in turn reported to President Jim Tressel. *Id.*

Plaintiff filed a charge of discrimination with the EEOC on January 20, 2016 claiming age discrimination and retaliation for filing a claim against YSU in 2006. *Id.* at PageID #: 302; ECF No. 48-10 at PageID #: 3759. The EEOC issued Plaintiff a right-to-sue notice on August 9, 2017, closing the investigation. ECF No. 37-38.

Plaintiff continued to work for YSU, teaching one course under a supplemental contract for YSU during the summer of 2015, two courses as an adjunct professor during the fall semester of 2015, and one course as an adjunct professor during the spring semester of 2016. ECF No. 33 at PageID #: 302.

3

(4:17CV2322)

## C. Plaintiff's Subsequent Job Applications With YSU

After YSU's nonrenewal of Plaintiff's contract, Plaintiff applied for 21 positions at YSU. *Id.* To date, YSU has not selected Plaintiff to fill any of these positions.[2] *Id.*

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the

---

[2] Plaintiff alleges in his Amended Complaint that he was "subjected to adverse employment actions in the form of the denial of his application for the academic and/or administrative positions within YSU, including, but not limited to," ten different positions. ECF No. 19 at PageID #: 163-65, 167. The parties stipulated to narrowing his claims to ten positions for which he applied but did not receive an offer of employment. ECF No. 45 at PageID #: 3585; ECF No. 33 at PageID #: 302. *Six* of these positions overlap with the positions expressly listed in the Amended Complaint: (1) Instructor, Mechanical Engineering, (2) Director, Dual Enrollment and Student Support, (3) Coordinator, Continuous Improvement Process, (4) Director, Center for Human Services Development, (5) Assistant Professor, Mechanical Engineering, and (6) Assistant Director, Research Services. The parties stipulate to include *four* other positions as the subject matter of the suit: (1) Program Coordinator, Metro Credit Educational Outreach, (2) Lecturer, School of Technology - First Year Engineering Technology, (3) Lecturer, Math and Statistics, and (4) Director, Career Development. *See* ECF No. 33 at PageID #: 302. Because Plaintiff does not challenge Defendants' characterization of Plaintiff's failure to hire claims as narrowed to these *ten* (above) positions (ECF No. 45 at PageID #: 3585), the Court considers this undisputed for purposes of this ruling. Fed. R. Civ. P. 56(e)(2). No party, in the briefing, makes reference to the remaining four positions listed in the Amended Complaint but not in the joint stipulations: (1) Associate Vice President for Student Success, (2) First Year Engineering Program Director, (3) Senior Coordinator 2, and (4) Associate Provost, Student Success.

4

pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the

non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Discussion

Defendants move for summary judgment on Plaintiff's claims of retaliation under Title VII of the Civil Rights Act of 1964 against YSU, reverse gender discrimination under Title IX of the Education Amendments of 1972 against YSU, and age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") against Tressel, Abraham, and Sturrus. Defendants aver Plaintiff failed to exhaust some of his claims for age discrimination and retaliation. Defendants also contend some of Plaintiff's alleged adverse actions under Title IX are time-barred. Additionally, Defendants claim Plaintiff cannot establish a *prima facie* case, or, in the alternative, cannot show evidence of pretext for any of his claims.

### A. Plaintiff's Burden of Production on Summary Judgment

In their motion, Defendants contend Plaintiff's claims of retaliation under Title VII, reverse gender discrimination under Title IX, and age discrimination under the ADEA due to YSU's non-renewal of Plaintiff's employment contract and subsequent ten failures to hire into various positions all fail because Plaintiff fails to establish at least one essential element for each

(4:17CV2322)

claim. Defendants allege the record accordingly supports judgment in their favor for each of these claims.

In response, Plaintiff argues the record supports eight of his claims. Specifically, he opposes summary judgment as to his claims for retaliation under Title VII for (1) non-renewal of his employment contract, (2) failure to hire into the position of Lecturer, Math and Statistics, and (3) failure to hire into the position of Assistant Director, Research Services, as well as his claims for discrimination under the ADEA for failure to hire into the positions of (4) Director, Dual Enrollment & Student Support Services, (5) Assistant Director, Research Services, (6) Instructor, Mechanical Engineering, (7) Assistant Professor, Mechanical Engineering, and (8) Coordinator, Continuous Improvement Process. ECF No. 50. He does not obviously oppose summary judgment as to any of his other claims. Curiously, he makes no mention of his claims for reverse sex discrimination under Title IX. Not once does Plaintiff make reference to sex or gender in his opposition to Defendants' summary judgment motion.

Defendants properly relies upon the absence of support in the record of at least one essential element for each of Plaintiff's claims. *See Celotex Corp.*, 477 U.S. at 322. The burden therefore shifts to Plaintiff to demonstrate the existence of genuine dispute for each of his claims. *Cox*, 53 F.3d at 150. By failing to oppose Defendants' summary judgment motion on all but eight of his claims, Plaintiff has not met his burden. Accordingly, the Court treats each unopposed claim as abandoned, and grants summary judgment as to each of these claims.[3] *See*

---

[3] Plaintiff abandoned the following claims:

(continued...)

(4:17CV2322)

*Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's

jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim

when a plaintiff fails to address it in response to a motion for summary judgment.").

### B. Failure to Exhaust Administrative Remedies

Before bringing suit under Title VII or the ADEA, a plaintiff must first exhaust his

administrative remedies by filing a timely discrimination charge with the EEOC. *Amini v.*

*Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). "[F]iling a timely charge of discrimination

with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that,

like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."

---

[3](...continued)
Retaliation in violation of Title VII for failure to hire into the positions of (1) Program
Coordinator, Metro Credit Educational Outreach, (2) Instructor, Mechanical Engineering,
(3) Director, Dual Enrollment and Student Support, (4) Coordinator, Continuous
Improvement Process, (5) Director, Center for Human Services Development, (6)
Lecturer, School of Technology - First Year Engineering Technology, (7) Assistant
Professor, Mechanical Engineering, and (8) Director, Career Development.

Discrimination in violation of the ADEA for (9) non-renewal of Plaintiff's employment
contract, and failure to hire into the positions of (10) Program Coordinator, Metro Credit
Educational Outreach, (11) Director, Center for Human Services Development, (12)
Lecturer, School of Technology - First Year Engineering Technology, (13) Lecturer, Math
and Statistics, and (14) Director, Career Development.

Reverse gender discrimination in violation of Title IX for (15) non-renewal of Plaintiff's
employment contract, and failure to hire into the positions of (16) Program Coordinator,
Metro Credit Educational Outreach, (17) Instructor, Mechanical Engineering, (18)
Director, Dual Enrollment and Student Support, (19) Coordinator, Continuous
Improvement Process, (20) Director, Center for Human Services Development, (21)
Lecturer, School of Technology - First Year Engineering Technology, (22) Assistant
Professor, Mechanical Engineering, (23) Assistant Director, Research Services, (24)
Lecturer, Math and Statistics, and (25) Director, Career Development. *See also* ECF Nos.
45 & 55.

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392 (1982). In order to meet the filing requirement, the claimant must explicitly file the claim in the EEOC charge, or the claim must reasonably be expected to grow out of the EEOC charge. *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 379 (6th Cir. 2002). Under this rule, if the facts alleged in the charge of discrimination would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim. *Id.* at 380. This is known as the expected scope of investigation test. *Id.*

In his January 20, 2016 charge of discrimination filed with the EEOC, Plaintiff alleges retaliation and age discrimination based on YSU's decision not to renew his contract and YSU's decisions not to hire Plaintiff into the positions of Instructor, Mechanical Engineering, Director, Dual Enrollment and Student Support, and Coordinator, Continuous Improvement Process.[4] ECF No. 48-10. Defendants do not challenge that Plaintiff's retaliation and age discrimination claims for these three positions have been administratively exhausted.[5]

Plaintiff applied to the positions of Assistant Professor, Mechanical Engineering and Assistant Director, Research Services *after* Plaintiff filed his 2016 EEOC charge of discrimination but *before* the EEOC issued its notice of right to sue letter closing its investigation

---

[4] In his EEOC charge, Plaintiff also claimed he was turned down for the position of Associate Vice President for Student Success. The Court considers Plaintiff's claim for failure to hire for the position of Associate Vice President for Student Success to be abandoned. *See* ECF No. 45 at PageID #: 3585.

[5] By not responding to Defendants' arguments in support of summary judgment for Plaintiff's retaliation claims for each of these three positions, Plaintiff has nonetheless abandoned these claims.

on August 9, 2017.  ECF No. 37-43.  Plaintiff applied to the position of Lecturer, Math and Statistics *after* the EEOC issued Plaintiff a notice of right to sue.  *Id.*  Defendants contend only the retaliation claims pertaining to the positions of Assistant Professor, Mechanical Engineering and Assistant Director, Research Services can survive.  ECF No. 45 at PageID #: 3590.

As Defendants admit, Plaintiff's claims for failure to hire into the positions of Assistant Professor, Mechanical Engineering and Assistant Director, Research Services would pass the expected scope of investigation test.[6]  Defendants contend, however, the age discrimination claims cannot be saved under the expected scope of investigation test.  *Id.*  Defendants argue Plaintiff's ADEA claims for failure to hire into the positions of Assistant Professor, Mechanical Engineering and Assistant Director, Research Services are barred because they were not administratively exhausted.  *Id.*  Defendants also contend Plaintiff's retaliation claim for failure to hire into the position of Lecturer of Math and Statistics must be administratively exhausted because it accrued *after* the EEOC closed its investigation.  *Id.*

The expected scope of investigation test is primarily used to analyze retaliation claims because "retaliation naturally grows out of any underlying substantive discrimination charge."

---

[6] It is unclear whether, by August 9, 2017, YSU had decided not to hire Plaintiff into each of these four positions.  Defendants provide a list of positions to which Plaintiff applied.  ECF No. 37-43.  Plaintiff, upon reviewing the list, testified he believed the list was current as of January 2018.  ECF No. 37 at PageID #: 1600.  The list indicates Plaintiff was not selected for the positions of Director, Center for Human Services Development or Assistant Director, Research Services.  ECF No. 37-43.  The position of Assistant Professor, Mechanical Engineering was cancelled.  *Id.*  The position of Program Coordinator, Metro Credit Educational Outreach had not been filled.  *Id.*  Nonetheless, Defendants concede in their motion that these four positions fall within the "scope of investigation" test.  ECF No. 45 at PageID #: 3590.

*Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999). Yet the facts alleged in a charge of discrimination can also prompt the EEOC to investigate an uncharged claim of discrimination. It is true that an aggrieved employee must file an EEOC charge within 300 days of a discrete unlawful employment action, such as a failure to hire. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002). However, the expected scope of investigation test covers specific and discrete adverse *actions* which may reasonably grow out of the original EEOC claim, but for which no EEOC charge was filed. *Delisle v. Brimfield Twp. Police Dep't.*, 94 F. App'x 247, 253-54; *see also Watson v. Ohio Dep't of Rehab. & Corr.*, 690 F. App'x 885, 890 (6th Cir. 2017) ("*Delisle* extends *Weigel* to "acts," so as to allow a plaintiff to bring a claim in court for an act that occurred any time after the EEOC charge's 300-day lookback even if he did not include that discrete act in the EEOC charge.").

Defendants have provided no support for the proposition that the expected scope of the investigation test only covers claims of retaliation. Plaintiff's allegations in his 2016 EEOC charge of YSU's failure to hire him into three positions could have prompted the EEOC to investigate Plaintiff's claims of age discrimination and retaliation with respect to the positions of Assistant Professor, Mechanical Engineering and Assistant Director, Research Services, to which Plaintiff had applied well before the close of the EEOC's investigation. Those claims are not barred by the doctrine of administrative exhaustion.

Nevertheless, Plaintiff must exhaust his administrative remedies for retaliation claims occurring *after* the issuance of the EEOC's right to sue notice. Several district courts within the Sixth Circuit have refused to allow plaintiffs to pursue claims for allegedly adverse actions

11

occurring only after the EEOC had already completed its investigation. *Schaefer v. U.S. Postal Serv.*, 254 F. Supp. 2d 741, 752 (S.D. Ohio 2002); *Leligdon v. McDonald*, No. 14-2810, 2015 WL 3622408, at *3 (N.D. Ohio June 9, 2015); *Lybarger v. Gates*, No. 10-373, 2012 WL 1095915, at *8 (N.D. Ohio Mar. 30, 2012); *Flowers v. Potter*, No. 05-52, 2008 WL 697630, at *10-11 (S.D. Ohio Mar. 11, 2008). "[T]hose courts have reached this conclusion on the basis of an argument that . . . any later-in-time claims could not have fallen within the scope of a reasonable investigation by the EEOC into a claimant's original charges, and thus were not reasonably related in a way that should excuse exhaustion." *Moore v. Third Judicial Circuit of Michigan*, 867 F. Supp. 2d 872, 878 (E.D. Mich. 2011).[7] In other words, it is impossible for a claim accruing after the close of the EEOC investigation to fall within the scope of investigation. Moreover, the courts have "an interest in protecting the administrative procedures of the EEOC so that Plaintiffs cannot bring countless Title VII charges in federal court." *Leligdon*, 2015 WL 3622408, at *3.

---

[7] In *Moore*, the district court, in reviewing the magistrate judge's ruling under a "clearly erroneous or contrary to law" standard, acknowledged *Flowers* and *Schaefer* but nevertheless permitted the plaintiff's retaliation claims to proceed. *Moore*, 867 F. Supp. 2d at 878. The magistrate judge determined requiring the administrative exhaustion of a retaliation claim after the EEOC closed its investigation would be contrary to judicial economy and the policy behind the exhaustion requirement of mediation and conciliation. *Id.* Because this rationale was well-supported by several cases reflecting similar reasoning, the district court declined to find the magistrate judge's ruling to be clearly erroneous or contrary to law. *Id.* Nonetheless, district courts in Ohio have uniformly found that claims accruing after the close of the EEOC's investigation must be administratively exhausted.

(4:17CV2322)

Because Plaintiff did not exhaust his administrative remedies, the Court grants summary judgment as to Plaintiff's retaliation claim for failure to hire into the position of Lecturer, Math and Statistics.

### C. Age Discrimination Claims for Failure to Hire

Under the ADEA, it is unlawful for an employer to refuse to hire an individual on the basis of age. 29 U.S.C. § 623(a)(1). When no direct evidence is presented, ADEA claims follow the burden-shifting approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green*. *Tennial v. United Parcel Svc., Inc.*, 840 F.3d 292, 305 (6th Cir. 2016). Under *McDonnell Douglas*, a plaintiff must first establish the elements of a *prima facie* case. *Id.* at 303. To establish a *prima facie* case of age discrimination, a plaintiff must show (1) she was over the age of 40, (2) she applied for and was qualified for the position, (3) she was considered for and denied the position, and (4) she was rejected in favor of a significantly younger person with similar or inferior qualifications to permit an inference of age discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996). A plaintiff's burden in establishing a *prima facie* case is not an onerous one. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).

If the plaintiff can meet his burden of establishing a *prima facie* case, the burden switches to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts back to the plaintiff to identify evidence from which a reasonable jury could conclude that the proffered reason is pretextual. *Id.* at 802-04. Evidence of pretext must show that the proffered

13

reason (1) has no basis in fact, (2) did not actually motivate the adverse employment action, or (3) was insufficient to warrant the adverse action. *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009).

"[A] plaintiff's *prima facie* case plus falsity of the employer's proffered reason may be sufficient to reach the jury." *See Alberty v. Columbus Twp.*, 730 F. App'x 352, 358 (6th Cir. 2018). However, in some cases, this may not be enough. *Id.* at 359. The Supreme Court explained:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148. The ultimate question is whether the evidence, taken as a whole and in the light most favorable to the plaintiff, is sufficient to permit a rational trier of fact to conclude that age was the "but-for" cause of the employer's adverse action. *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 532 (6th Cir. 2014) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009)); *see also Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (pretext requires a showing that the employer's proffered reason was false and that discrimination was the real reason for the adverse employment action).

### 1. Director, Dual Enrollment & Student Support Services

Defendants contend Plaintiff cannot establish a *prima facie* claim under the ADEA for failure to hire because he is not qualified for the position of Director, Dual Enrollment & Student

(4:17CV2322)

Support Services.  At the *prima facie* stage, courts focus on a plaintiff's objective qualifications to determine whether the plaintiff is qualified for the relevant job.  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003).  A plaintiff must therefore present credible evidence that her qualifications are "at least equivalent to the minimum objective criteria required for employment in the relative field." *Id.* at 576.  "Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.*

Plaintiff has met his *prima facie* burden in showing he is qualified for the position of Director, Dual Enrollment & Student Support Services.  Plaintiff does not possess a Master's degree in mathematics.  ECF No. 33 at PageID #: 300; ECF No. 45 at PageID #: 3603.  However, Plaintiff possesses a Bachelor's degree in Mathematics, a Bachelor's degree in Mechanical Engineering, a Master's degree in Education, and a Doctor of Education.  ECF No. 33 at PageID #: 299.  Plaintiff is also licensed to teach mathematics and physics at a high school level, and has taught numerous classes at YSU since the 1999-2000 academic year. *Id.* at PageID #: 300.  A reasonable juror could find that Plaintiff's qualifications are objectively equivalent to the minimum objective criteria required for the position.

In turn, Defendants contend Plaintiff was not hired because he did not meet the minimum educational qualifications YSU desired for the position.  The job posting for the position of Director, Dual Enrollment & Student Support Services indicates that a Master's degree in mathematics is a minimum qualification.  ECF No. 37-50 at PageID #: 1865.  All three

15

individuals on the Search Committee for the position testified that, after reviewing Plaintiff's *curriculum vitae*, they concluded Plaintiff did not meet the minimum qualifications. ECF No. 45 at PageID #: 3603. The successful applicant, Julie Seitz, obtained a Master's degree in Mathematics from YSU in August 2015. ECF No. 38-4 at PageID #: 2131-32.

To show pretext, Plaintiff identifies actions taken by YSU and evidence he claims demonstrates Seitz was pre-selected by Department Chair Angela Spalsbury. ECF No. 50 at PageID #: 4575-77, 4589-91. Selection Committee Member Richard Goldthwait testified that Spalsbury wanted Seitz to get the position. ECF No. 49-4 at PageID #: 4370. The job listing was modified to require prospective candidates to possess a Master's degree in mathematics by August 31, 2015, the same month during which Seitz was scheduled to receive her qualifying degree. ECF No 36-1 at PageID #: 1100; ECF No. 36-4 at PageID #: 1153. Moreover, in discussing the selection process, Selection Member Lori Carlson stated she felt there was some degree of bias or pre-selection in favor of Seitz. ECF No. 36-4 at PageID #: 1153.

However, it is unclear how Seitz's pre-selection shows YSU did not hire Plaintiff because of his age. Plaintiff has not produced any evidence connecting his non-hire to his age. Plaintiff testified he believed that Seitz was chosen because she was a "close friend and student of Spalsbury." ECF No. 37 at PageID #: 1466. Spalsbury and Seitz had worked together in the past. ECF No. 49-4 at PageID #: 4370. Spalsbury liked Seitz and wanted her to get the job. *Id.*; ECF No. 49-2 at PageID #: 4240. The record shows that, if Plaintiff's failure to meet the minimum educational qualifications was not the reason for his non-hire, it was because of Spalsbury's pre-existing professional relationship with Seitz. Plaintiff only establishes that Seitz

is significantly younger than he is. He produces no other evidence suggesting that the alleged pre-selection was because of age. That Plaintiff was replaced by a younger person is insufficient as a matter of law to raise a genuine dispute of material fact. *Tennial*, 840 F.3d at 305-06 (6th Cir. 2016). Accordingly, the Court grants summary judgment as to Plaintiff's ADEA claim for failure to hire into the position of Director, Dual Enrollment & Student Support Services.

### 2. Instructor, Mechanical Engineering

Similarly, Plaintiff has met his burden in showing he is qualified for the position of Instructor, Mechanical Engineering. Plaintiff does not possess a Master's degree in mechanical engineering or a closely related field. ECF No. 33 at PageID #: 300; ECF No. 45 at PageID #: 3603. However, Plaintiff's education and experience could reasonably be substituted to show he is objectively qualified for the position. Dr. Elvin Shields, a member of the Search Committee for the position of Instructor, Mechanical Engineering, would have considered Plaintiff's education and experience to meet an equivalency standard for the position. ECF No. 50-2 at PageID #: 4640-41. A reasonable juror could similarly find that Plaintiff's qualifications are objectively equivalent.

As with the position of Director, Dual Enrollment & Student Support Services, Defendants claim Plaintiff was not hired because he did not meet the minimum educational qualifications YSU desired for the position. The job posting for the position of Instructor, Mechanical Engineering indicates that a Master's degree in mechanical engineering or a closely related field is a minimum qualification. ECF No. 37-49. Search Committee Chair Hazel Marie testified that "closely related fields" include those under the "umbrella of mechanical

engineering," such as aerospace engineering, metallurgy/materials science and engineering, and biomedical engineering. ECF No. 40 at PageID #: 2617-18. Plaintiff's degrees do not fall under the umbrella of mechanical engineering. He does not meet the posted educational requirement for the position.

In response, Plaintiff again claims Defendants' proffered reason for the decision not to hire Plaintiff for the position of Instructor, Mechanical Engineering was pretextual. Plaintiff claims Search Chair Dr. Virgil Solomon "was pushing the position [of Instructor, Mechanical Engineering] to go to [successful candidate] Stefan Moldovan." ECF No. 49-3 at PageID #: 4328. Dr. Shields, in a supporting declaration, opines that the "search was highly irregular" because it excluded Plaintiff, a qualified candidate and favored Dr. Moldovan, who seemed to be pre-selected. ECF No. 50-2 at PageID #: 4641. According to Dr. Shields, Plaintiff's application for the position of Instructor, Mechanical Engineering never reached the search committee. Id. at PageID #: 4640. Dr. Shields avers the application should have been considered. Id.

None of this establishes pretext. Whether Dr. Moldovan was pre-selected by Dr. Solomon has no bearing on whether Plaintiff was not hired because he did not have a Master's degree in mechanical engineering or closely related field. Plaintiff did not meet the minimum educational requirements YSU posted for the position. Additionally, as in his claim for failure to hire into the position of Director, Dual Enrollment & Student Support Services, Plaintiff simply asserts that Dr. Moldovan is significantly younger, and provides no other evidence connecting his claim for failure to hire to his age. Accordingly, the Court grants summary judgment as to

(4:17CV2322)

Plaintiff's ADEA claim for failure to hire into the positions of Instructor, Mechanical Engineering.

### 3. Assistant Professor, Mechanical Engineering

YSU never filled the position of Assistant Professor, Mechanical Engineering. ECF No. 37-43. Accordingly, Plaintiff cannot show YSU failed to hire him into the position in favor of a significantly younger person with similar or inferior qualifications to permit an inference of age discrimination. He cannot establish a *prima facie* case for this claim.[8] Accordingly, the Court grants summary judgment as to Plaintiff's ADEA claim for failure to hire into the positions of Assistant Professor, Mechanical Engineering.

### 4. Coordinator, Continuous Improvement Process

Defendants claim Plaintiff was not hired for the position of Coordinator, Continuous Improvement Process because three of the five members of the search committee "were of the belief that Plaintiff did not . . . meet the minimum qualifications for the position." ECF No. 45 at PageID #: 3603. In response, Plaintiff claims he met all of the minimum qualifications for the position, listing his degrees, experience, and skills. ECF No. 50 at PageID #: 4594-95. While this would support that Plaintiff was qualified for the position for the purposes of establishing a *prima facie* case, it does nothing to show that the search committee's reason for not hiring him was pretextual. Even if Plaintiff was objectively qualified for the position, the search committee's honest belief that he was not qualified for the position would defeat Plaintiff's

---

[8] Even if Plaintiff could establish a *prima facie* case, he provides no evidence that Defendants' decision not to hire him into the position because he did not have a Master's degree in mechanical engineering or closely related field was pretextual.

attack on the legitimacy of the proffered reason.  *See Seeger*, 681 F.3d at 285-86 ("As long as the employer held an honest belief in its proffered reason, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless."). Accordingly, the Court grants summary judgment as to Plaintiff's ADEA claim for failure to hire into the position of Coordinator, Continuous Improvement Process.

### 5. Assistant Director, Research Services

Defendants contend Plaintiff was not hired into the position of Assistant Director, Research Services because  "he was not impressive in his interview." ECF No. 45 at PageID #: 3607; ECF No. 45-2 at PageID #: 3613.  Michael Hripko, the hiring authority for the search, sat in on Plaintiff's Skype interview as an observer because one of the members of the search committee had a family emergency.  ECF No. 45-2 at PageID #: 3613.  In Hripko's opinion, Plaintiff was unable to provide comprehensive responses to several substantive questions about electronic research administration, which is a key duty of the position.  *Id.*  The successful candidate, Ashley Riggleman, had extensive experience with YSU's newly purchased electronic research administration software program.  *Id.* at PageID #: 3614.

In response, Plaintiff provides evidence that Hripko told his supervisor, Defendant Abraham, that Plaintiff was scheduled to interview for the position.  ECF No. 49-1 at PageID #: 4212.  Abraham was responsible for approving the hire.  *Id.*  At the time, Plaintiff had a pending EEOC claim against Abraham.  ECF No. 50 at PageID #: 4592.  Plaintiff states Hripko then replaced a member of the search committee and conducted the interview.  *Id.*  He also alleges Riggleman was significantly younger.  *Id.* at PageID #: 4593.  Finally, he disputes that his

interview was poor.  In support, he contends in his affidavit "that an interviewer on the search deemed [Riggleman] immature and reported that to . . . Hripko."  ECF No. 50-1 at PageID #: 4635.

None of this shows pretext.  Since Abraham was responsible for approving the hire, it would follow that Hripko would tell Abraham that Plaintiff was scheduled to interview for the position.  Hripko avers that he replaced a member of the search committee due to a family emergency.  Plaintiff does not allege or provide evidence that Hripko's replacing of the search committee member was for an improper purpose.  Additionally, Plaintiff does not contest his lack of familiarity with electronic research administration, instead asserting he could have mastered YSU's software "within a couple of weeks."  ECF No. 50-1 at PageID #: 4635. Plaintiff does not provide evidence sufficient for a reasonable juror to conclude YSU's proffered reason was false.  Finally, Plaintiff provides no evidence, other than the fact that Riggleman is significantly younger, suggesting his age was a but-for cause of his non-hire.  Accordingly, the Court grants summary judgment as to Plaintiff's ADEA claim for failure to hire into the position of Assistant Director, Research Services.

### D.  Retaliation Under Title VII

Title VII prohibits retaliation based on an employee's opposition to unlawful employment practices or submitting or supporting a complaint about discrimination.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359-60 (2013); *see* 42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation, a plaintiff must show (1) the plaintiff engaged in protected activity, (2) the defendant knew of the exercise of the protected right, (3) the defendant took an adverse

employment action against the plaintiff, and (4) there was a causal connection between the protected activity and adverse employment action. *Flones v. Beaumont Health Sys.*, 567 F. App'x 399, 408 (6th Cir. 2014).

Retaliation claims under Title VII supported by circumstantial evidence follow the *McDonnell Douglas* burden-shifting framework. *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997). Title VII retaliation claims must be proved according to traditional principles of but-for causation. *Nassar*, 570 U.S. at 360.

### 1. Assistant Director, Research Services

Plaintiff fails to show any causal connection between his pending EEOC charge and YSU's decision not to hire him into the position of Assistant Director, Research Services. Plaintiff filed his EEOC charge on January 20, 2016, naming, among others, Abraham. ECF No. 33 at PageID #: 302. Plaintiff applied for the position of Assistant Director, Research Services on November 4, 2016. ECF No. 37-43. While mere temporal proximity between the employer's knowledge of the protected activity and the adverse employment action can act as sufficient evidence of causality to establish a *prima facie* case, the temporal proximity must be so close as to be unusually suggestive. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *see also Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three months is not sufficiently close).

Over nine months elapsed between Plaintiff's EEOC charge and Plaintiff's application for the position. By itself, this does not support causation through temporal proximity. Plaintiff's contentions that Abraham was "very close" to Hripko, that Hripko attended Plaintiff's

interview in lieu of another search committee member (who was tending to a family emergency), and that the interview was "irregular" does not establish a *prima facie* case for causation. Even if it did, Plaintiff fails to show Defendants' proffered reason of his non-hire, that "he was not impressive in his interview," was pretextual for retaliation. Accordingly, the Court grants summary judgment as to Plaintiff's retaliation claim under Title VII for failure to hire into the position of Assistant Director, Research Services.

## 2. Non-Renewal of His Employment Contract (Title VII)

YSU does not dispute that Plaintiff meets the first three prongs of his *prima facie* case for retaliation based on non-renewal of his employment contract. ECF No. 45 at PageID #: 3599. Plaintiff filed suit in federal court against YSU in 2006. *Id.* Abraham, who determined Plaintiff's contract would not be renewed, was aware of the 2006 lawsuit. *Id.* Finally, Plaintiff's non-renewal was an adverse employment action. *Id.* Instead, YSU urges the Court to enter summary judgment on this claim because of the lack of temporal proximity between Plaintiff's 2006 lawsuit and YSU's decision not to renew Plaintiff's contract in 2015. *Id.* YSU claims that the lapse in time alone is fatal to Plaintiff's attempt to establish a causal connection. *Id.*

"A mere lapse in time between the protected activity and the adverse employment action does not inevitably foreclose a finding of causality." *Dixon v. Gonzales*, 481 F.3d 324, 335 (6th Cir. 2007). Nonetheless, "multiyear gaps between the protected conduct and the first retaliatory act have been insufficient to establish the requisite causal connection." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 676 (6th Cir. 2013). A lack of temporal proximity alone can be fatal to an

attempt to establish a causal connection. *Id.*; *see also Fuelling v. New Vision Med. Labs. LLC, 284 F. App'x 247, 260 (6th Cir. 2008)* ("[U]nder Sixth Circuit caselaw, a 15-month period between the protected activity and the adverse employment action is insufficient on its own to establish a causal connection."). However, even if there is a substantial lapse in time between the protected activity and adverse employment action, evidence showing an employer had no opportunity to retaliate sooner supports a finding of temporal proximity. *Sharp v. Aker Plant Servs. Grp., Inc., 600 F. App'x 337, 342 (6th Cir. 2015).*

Plaintiff settled his 2006 lawsuit in March 2008. ECF No. 33 at PageID #: 301. The settlement agreement entitled Plaintiff to reinstatement for the fall semester of 2008. *Id.* Plaintiff was also entitled to renewal of his employment contract on an annual basis for the academic years of 2008-09, 2009-10, 2010-11, and 2011-12. *Id.* Beginning in 2012-13, YSU was free to decline to renew Plaintiff's employment contract. ECF No. 48-3 at PageID #: 3687. YSU's first opportunity to retaliate against Plaintiff would have been by declining renewal of his contract in 2012-13. Instead, YSU renewed Plaintiff's yearly employment contract three times, waiting until 2015 before declining to renew his contract. ECF No. 33 at PageID #: 301. A three year period is fatal to establishing a causal connection for retaliation.

Plaintiff contends that YSU's first opportunity to retaliate against him was on April 5, 2015, the date on which YSU would no longer be required to provide group medical insurance benefits to him. ECF No. 50 at PageID #: 4563. If Plaintiff were terminated before April 5, 2015, YSU would have had to continue providing health insurance coverage through that date.

This argument fails. The mere fact that YSU, if it declined Plaintiff's employment

contract before April 5, 2015, would have had to continue providing Plaintiff with medical insurance benefits through that date, does not mean that YSU did not have an opportunity to do so. While YSU may have been disincentivized to terminate him earlier, a non-renewal of Plaintiff's contract would still have been an adverse employment action. Because three years elapsed between YSU's first opportunity to retaliate against Plaintiff in 2012 and YSU's decision not to renew Plaintiff's contract in 2015, the lack of temporal proximity dooms Plaintiff's attempt to establish a causal connection. Accordingly, the Court grants summary judgment as to Plaintiff's retaliation claim under Title VII for non-renewal of his employment contract.

### E.  Plaintiff's Motion for Leave to File a Supplemental Complaint[9]

Finally, Plaintiff seeks to supplement his complaint under Fed. R. Civ. P. 15(d) with facts supporting failures to hire into the positions of Lecturer, School of Technology - First Year Engineering Technology and Lecturer, Math and Statistics. ECF No. 52 at PageID #: 4657-58. Defendants oppose the motion. ECF Nos. 56 & 58.

Leave to amend or supplement a pleading should be freely granted in the absence of reasons such as undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182. The granting or refusing of leave to file an amended or supplemental pleading ultimately rests in the discretion of the district court. *Schuckman v. Rubenstein*, 164 F.2d 952, 958 (6th Cir. 1947). Additionally, if amendment would require modification to the court's Rule 16 scheduling order,

---

[9] Plaintiff's memorandum in support of his Motion for Leave to File a Supplemental Complaint is 17 pages long. Memoranda related to non-dispositive motions must not exceed 15 pages in length unless authorized by the court. L.R. 7.1(f).

the moving party must show good cause. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). Good cause is measured by the movant's diligence in attempting to meet the case management order's requirements and whether the opposing party will suffer prejudice by virtue of the amendment. *Id.*

At his deposition on June 27, 2018, Plaintiff testified that he knew he was not hired for the positions of Lecturer, School of Technology - First Year Engineering Technology and Lecturer, Math and Statistics. ECF No. 49-3 at PageID #: 4346, 4348. He filed his motion for leave to file a supplemental complaint on December 24, 2018. He makes no effort to explain the reason for waiting six months to file his motion. In that time, the discovery cutoff passed, the dispositive motion cutoff passed, and a motion for summary judgment was filed. Permitting amendment at this stage in litigation, without justification, would create significant prejudice to Defendant in having to defend against additional claims and potentially reopen discovery. *See Duggins*, 195 F.3d at 834. Moreover, Plaintiff's lack of diligence in pursuing leave to amend or supplement his complaint precludes him from seeking such relief.

Additionally, as pointed out in Defendants' supplement to their opposition, due to Plaintiff's recent (January 3, 2019) EEOC filing, that agency now has exclusive jurisdiction to investigate Plaintiff's Title VII claims for a 180-day period. ECF No. 58 at Page ID #: 4782. Plaintiff is precluded by statute from bringing these claims in federal district court until he receives a right to sue letter from the EEOC. *Id.* Therefore, Plaintiff's proposed supplemental Title VII claims are under the jurisdiction of the EEOC. Plaintiff's proposed claims regarding

(4:17CV2322)

these two positions should not be addressed by the Court.  For this reason as well, the Court

denies Plaintiff's Motion for Leave to File Supplemental Complaint.

**IV.  Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is granted in its

entirety.  Plaintiff's motion for leave to file a supplemental complaint is denied.

All further proceedings are cancelled.


IT IS SO ORDERED.


   January 7, 2019                         */s/ Benita Y. Pearson*             
Date                                              Benita Y. Pearson
                                             United States District Judge